# UNITED STATES DISTRICT COURT

# DISTRICT OF MARYLAND

| | |
|---|---|
| MALIBU MEDIA, LLC,<br>   Plaintiff,<br>  v.<br>JOHN DOE subscriber assigned IP address<br>173.64.119.92,<br>   Defendant. | Case No. 1:14-cv-0223-MJG<br><br>Assigned to:  Honorable Marvin J. Garbis<br>     United States District Judge |
| MALIBU MEDIA, LLC,<br>   Plaintiff,<br>  v.<br>JOHN DOE subscriber assigned IP address<br>71.200.143.209,<br>   Defendant. | Case No. 1:14-cv-0257-CCB<br><br>Assigned to:  Honorable Catherine C. Blake<br>     United States District Judge |
| MALIBU MEDIA, LLC,<br>   Plaintiff,<br>  v.<br>JOHN DOE subscriber assigned IP address<br>76.100.228.15<br>   Defendant. | Case No. 1:14-cv-0263-RDB[1]<br><br>Assigned to:  Honorable Richard D. Bennett<br>     United States District Judge |

### ISP SUBSCRIBER'S MOTION TO: (1) INTERVENE ANONYMOUSLY; (2) CONSOLIDATE MALIBU MEDIA CASES; AND (3) TEMPORARILY STAY OUTSTANDING SUBPOENAS

---

[1] An identical version of this motion is being filed concurrently in all cases identified on the caption.  In addition, courtesy copies of these papers are being provided to Judges Titus, Grimm and Motz, due to the issues raised with respect to potential consolidation.

# NOTICE OF MOTION

Comes now the Internet user who pays the bill for the account associated with the IP address listed on the caption of this case, who plaintiff Malibu Media, LLC ("**Malibu**") accuses of being the John Doe defendant in this action, ("**Movant**"), by and through counsel, to move the Court, as follows: (1) to intervene in this action, per Fed. R. Civ. P. 24, on an anonymous basis, for the purpose of adjudicating the issues raised in Movant's concurrently-filed motion for an order to show cause as to why all evidence and data from Tobias Fieser and his company IPP should not be precluded and these cases dismissed (the "**Motion For An OSC**"); (2) to consolidate, per Fed. R. Civ. P. 42(a)(1), this and other Malibu cases in this district for the purpose of deciding the Motion For An OSC; and (3) to stay the return dates on any outstanding ISP subpoenas, and stay the issuance of any further ISP subpoenas, pending adjudication of the Motion For An OSC.

## TABLE OF CONTENTS TO MEMORANDUM IN SUPPORT

NOTICE OF MOTION ....................................................................................................... 2

TABLE OF CONTENTS TO MEMORANDUM IN SUPPORT ............................................ 3

TABLE OF AUTHORITIES ............................................................................................... 4

I. INTRODUCTION AND SUMMARY .............................................................................. 6

II. RELEVANT FACTUAL AND PROCEDURAL BACKGROUND ................................... 6

III. INTERVENTION BY MOVANT IS WARRANTED ..................................................... 15

IV. ALL OF MALIBU'S CASES IN THIS DISTRICT SHOULD  BE CONSOLIDATED FOR THE PURPOSE OF DETERMINING  THE ISSUES RAISED IN THE MOTION FOR AN OSC .............. 19

V. PENDING ADJUDICATION OF THE MOTION FOR AN OSC,  ALL ISP SUBPOENA RETURNS SHOULD BE STAYED ........................................................................................ 20

VI. CONCLUSION ........................................................................................................... 23

# TABLE OF AUTHORITIES

## Cases

*Accrued Fin. Servs., Inc. v. Prime Retail, Inc.*, 2000 WL 976800 at *3 n. 3,

   (D. Md. No. 1:99-cv-2573, ECF No. 20, 6/19/00) ("*Accrued Financial I*") .......................................... 8

*Accrued Fin. Servs., Inc. v. Prime Retail, Inc.*,

   298 F.3d 291, 300 (4th Cir. 2002)  ("*Accrued Financial II*") ................................................................. 8

*Amlong & Amlong, P.A. v. Denny's, Inc.*, 500 F.3d 1230, 1242 (11th Cir. 2007) ................................... 21

*Appleton v. FDA*, 310 F. Supp. 2d 194, 196 (D.D.C. 2004) ............................................................. 15, 16

*Cooter & Gell v. Hartmax Corp.*, 496 U.S. 384, 390 (1990) .................................................................... 5

*Elliott Indus. v BP Am. Prod. Co.*, 407 F3d 1091 (10th Cir. 2005) ........................................................ 16

*Fund for Animals, Inc. v. Norton*, 322 F.3d 728, 731 (D.C. Cir. 2003) .................................................. 15

*Hanes*, 712 F. Supp. at 1230 at 1230, fn. 5 ........................................................................................... 18

*Hines v. KFC United States Props.*, 2010 U.S. Dist. LEXIS 13051 (S.D. Cal. Feb. 16, 2010) ............... 10

*Ingenuity 13, LLC v. John Doe*, 2013 U.S. Dist. LEXIS 64564 (C.D. Cal., May 6, 2013) .................... 5, 9

*Johnson v. Manhattan Railway Co.*, 289 U.S. 479, 496, 77 L. Ed. 1331, 53 S. Ct. 721 (1933) .............. 18

*Malibu Media, LLC v. Booth*, D. Colo. No. 1:13-cv-2362 (Daniel, J.) .................................................... 13

*Malibu Media, LLC v. House*, 2014 U.S. Dist. LEXIS 27939

   (E.D. Mi. No. 13-12218, ECF No. 35, 3/5/14) ..................................................................................... 16

Malibu Media, LLC v. John Doe, D.D.C. No. 1:12-cv-764-BAH ........................................................... 21

Malibu Media, LLC v. John Doe, E.D. Mi. No. 2:12-cv-13312-DPH ..................................................... 21

*Malibu Media, LLC v. John Doe*, E.D. Mi. No. 2:13-cv-11432 (Drain, J.) .............................................. 13

*Malibu Media, LLC v. John Doe*, N.D. Ill. No. 1:13-cv-2702 (Shadur, J.) ............................................. 13

*Malibu Media, LLC v. John Doe*, N.D. Ill. No. 1:13-cv-3648 (Kennelly, J.) ........................................... 13

*Malibu Media, LLC v. John Doe*, N.D. Ill. No. 1:13-cv-3707 (Darrah, J.) ............................................. 13

*Malibu Media, LLC v. John Does*, C.D. Cal. No. 2:12-cv-3614-RGK ................................................... 19

*Malibu Media, LLC v. Pelizzo*, S.D. Fl. No. 1:12-cv-22768 ............................................................. 20, 21

*Miller v. United States Postal Service*, 729 F.2d 1033, 1036 (5th Cir. 1984) .......................................... 18

*Patrick Collins v. John Does*, C.D. Cal. No. 2:12-cv-5267-JVS ............................................................. 20

*Supreme Court. NAACP v. New York*, 413 U.S. 345, 366, 93 S. Ct. 2591, 37 L. Ed. 2d 648 (1973)....... 15

*Werbungs und Commerz Union Austalt v. Collectors' Guild, Ltd.*,

    782 F. Supp. 870, 874 (S.D.N.Y. 1991) ........................................................................... 15

**Statutes**

18 U.S.C. § 201(c)(2)........................................................................................................................ 8

**Rules**

Fed. R. Civ. P. 24 ..................................................................................................................... passim

Fed. R. Civ. P. 27 ............................................................................................................................ 14

Fed. R. Civ. P. 42 ..................................................................................................................... passim

Maryland Rules of Professional Conduct, Rule 3.4(b) ..................................................................... 8

**Other Authorities**

6-24 Moore's Federal Practice - Civil § 24.21........................................................................................ 16

Matthew Sag, "Copyright Trolling, An Empirical Study," (March 21, 2014). Iowa Law Review,

    Forthcoming. Link: http://ssrn.com/abstract=2404950 ...................................................... 6

Wright & A. Miller, Federal Practice and Procedure § 2384, p. 263 (1971)........................................... 18

# I.  INTRODUCTION AND SUMMARY[2]

"What has been is what will be, and what has been done is what will be done, and there is nothing new under the sun." - Ecclesiastes 1:9

The history of so-called "copyright trolling"[3] by pornography settlement cartels is only a few years old, but it is already repeating itself.  About a year ago, in litigation that became somewhat infamous in the federal courts, plaintiff's lawyers associated with the Prenda Law Firm, who were engaged in essentially the same business as Malibu is here, were sanctioned by Judge Otis D. Wright, II. *Ingenuity 13, LLC v. John Doe*, 2013 U.S. Dist. LEXIS 64564 (C.D. Cal., May 6, 2013) (Case No. 12-cv-8333, ECF No. 130) (assessing monetary sanctions and referring lawyers engaged in mass filing of pornographic infringement lawsuits for criminal prosecution after they pled the fifth rather than answer Court's questions about who was really behind the litigation).

In the Prenda case, when confronted with probing questions about mysterious offshore shell companies fronting the nationwide settlement mill, rather than provide answers to these questions, the Prenda lawyers attempted to "cut [their] losses and run out of court, using Rule 41 as an emergency exit."[4]  It appears that the same thing has now occurred in the Malibu cases in this district.  Malibu has unilaterally dismissed a case pending before Judge Motz,[5] rather than address troubling concerns about

---

[2] Section I of this brief, "Introduction And Summary," is identical to the brief in support of the concurrently-filed Motion For An OSC.  The remainder of both briefs, however, is different.

[3] For a timely and empirically-supported discussion of this phenomenon, which includes the first workable definition of "copyright trolling," *see* Matthew Sag, "Copyright Trolling, An Empirical  Study," (March 21, 2014). Iowa Law Review, Forthcoming. Link: http://ssrn.com/abstract=2404950

[4] *Cooter & Gell v. Hartmax Corp.*, 496 U.S. 384, 390 (1990).

[5] *See Malibu Media, LLC v. John Doe*, D. Md. No. 8:13-cv-03024-JFM, ECF No. 16, 3/6/14 (Notice of Voluntary Dismissal).  The same defense counsel handled that case as this one.  Malibu's counsel in Maryland was notified that a motion would be brought in that case to exclude the testimony of Tobias Fieser and his company IPP. Exhibit X at pp. 1–2.  More specifically, counsel was provided with a copy of a motion from Colorado (Exhibit X at pp. 6–10) which cited, at footnote 5, both *Accrued Fin. Servs., Inc. v. Prime Retail, Inc.*, 298 F.3d 291, 300 (4th Cir. 2002); and *Farmer v. Ramsay*, 159 F. Supp. 2d 873, 883 (D. Md. 2001) *aff'd on other grounds*, 43 Fed.

the fact that Malibu (or its lawyers) apparently pays the key witness in these cases pursuant to an "oral contingency agreement."  The difference is that with Prenda it was the plaintiff's lawyers themselves hiding behind the foreign shell companies to mask the fact that they were the real parties in interest. Here, by contrast, it is a disreputable German computer forensic firm that is attempting to cover its tracks with a maze of affiliates, and which is being paid on a contingent fee basis to provide the factual underpinnings for all of Malibu's lawsuits. It is now time for some answers, which Malibu clearly wishes to avoid, and for an appropriate reckoning.

In the last three years, Malibu has filed approximately 1,817 copyright infringement lawsuits nationwide, with 175 of those suits being filed in this district, at last count.  Pietz Decl. ¶ 4.  In every instance, these lawsuits are supported by evidence provided by the German firm IPP. *See, e.g.,* Complaint ¶¶ 18-28 (ECF No. 1); Exhibits A-B to Complaint (ECF No. 1-1 and 1-2); *see also* Declaration of Tobias Fieser in support of *ex parte* Motion for Leave to Take Discovery Prior to a Rule 26(f) Conference ("**Fieser Decl.**") (ECF No. 4-5).

However, what Malibu has ***not*** disclosed to this Court is that IPP is a financially interested party being paid on contingency.  Exhibit B,[6] Response No. 1.  Specifically, in all of Malibu's cases, here, as elsewhere, IPP supplied the data underpinning the case pursuant to an "oral contingency agreement" with Malibu's national counsel Keith Lipscomb, of the Miami-based law firm Lipscomb, Eisenberg & Baker, P.L.  *See id.*  Malibu's reliance upon IPP, a contingent-fee witness, is contrary to common law

---

App'x 547 (4th Cir. 2002) (citing *Accrued Financial* and stating "'[a]s Chief Judge Motz of this Court observed, 'witness contingency fee agreements affirmatively violate the fundamental policy of Maryland and the United States.'" ). Malibu's counsel initially promised a "comprehensive response" on the contingent fee witness issue (Exhibit X at p. 3), which never came.  Instead, three days later, Malibu simply dismissed the case before Judge Motz per Fed. R. Civ. P. 41(a)(1)(A)(i).  Pietz Decl, ¶ 43.

[6] Unless otherwise noted, all Exhibit references are to the Pietz Decl.

principles, public policy, the ABA Model and Maryland Rules of Professional Conduct, Rule 3.4(b), as well as the Federal Anti-Gratuity Statute, 18 U.S.C. § 201(c)(2).

As Judge Motz once noted of the problem posed by deals to pay witnesses a contingent fee, "[f]inancial arrangements that provide incentives for the falsification and exaggeration of testimony threaten the very integrity of the judicial process which depends upon the truthfulness of witnesses." *Accrued Fin. Servs., Inc. v. Prime Retail, Inc.*, 2000 WL 976800 at *3 n. 3, (D. Md. No. 1:99-cv-2573, ECF No. 20, 6/19/00) (Motz, J.) *aff'd by* 298 F.3d 291, 300 (4th Cir. 2002) ("[w]e thus agree with the district court that, whether under the label of maintenance, champerty or barratry, the Assignments in this case violate Maryland's strong public policy against the stirring up litigation or promoting litigation for the benefit of the promoter rather than for the benefit of the litigant or the public."); *see also Farmer v. Ramsay*, 159 F. Supp. 2d 873, 883 (D. Md. 2001) (granting motion to strike reports of expert retained under contingency fee arrangement and noting "[a]s Chief Judge Motz of this Court observed, 'witness contingency fee agreements affirmatively violate the fundamental policy of Maryland and the United States.'"), *aff'd on other grounds*, 43 Fed. Appx. 547, 551 (4th Cir. 2002); *citing Accrued Fin. Servs.*, 2000 WL 976800 at *3 n. 3.

Beyond the *potential* for impropriety and the affront to the integrity of the judicial system as a whole posed by Malibu paying its key witness on contingency, there are other serious reasons to doubt the technical reliability and honesty of IPP and the people behind it. *See* Declaration of Morgan Pietz re: IPP, Guardaley, and the "Oral Contingency Agreement" Malibu Media, LLC Had With Its Expert ("**Pietz Decl.**").

Notably, IPP itself is nothing more than a shell company designed to hide the fact that the technology supposedly relied upon by plaintiff, and the people behind it, really come from a discredited

German company called Guardaley.  *See* Pietz Decl.  In a German case, the State Court of Berlin ruled against Guardaley and found that its opponents "have stated and made a credible showing," that the claim that Guardaley "provides unreliable investigative services, is true."  Pietz Decl., ¶ 24; Exhibit J, p. 11.  Further, when Guardaley was confronted with the glaring problem in its software, which caused an unknown number of unjustified cease and desist letter to be sent out, Guardaley's principals attempted to hide the problem from the lawyers who had engaged them.  Pietz Decl., ¶¶ 18–19.  What the German court case and the evidence adduced there shows is that Guardaley was essentially caught running a so-called honeypot,[7] "by means of a falsified bit field" in the software, that was used to lure would-be infringers to try and download content monitored by Guardaley, so that those people could then be threatened with suit.  Pietz Decl., ¶ 26.

If the key witness being paid on a contingent fee basis for his testimony in this case was otherwise reputable, or if the contingent payment arrangement was an honest mistake made by litigants who did not know any better, perhaps the issue could be discounted.  Here though, just the opposite is true: Fieser and IPP are merely a front for Guardaley, a company that was caught once before engaging in impropriety, and whose methods were found by a German court to be unreliable.  And the "oral contingency agreement" here was apparently negotiated by Malibu's head national counsel, presumably so as to not leave a paper trail.  Exhibit C.

All of the documents submitted with the Pietz Decl., taken together, seem to suggest a plan of deception on the part of Guardaley, IPP and/or Malibu to hide the truth about IPP's direct, contingent interest in the outcome of these cases, and its links to Guardaley.  *See* Pietz Decl.  Judge Wright noted of Prenda,

---

[7] "A honey pot is a computer system on the Internet that is expressly set up to attract and 'trap' people who attempt to penetrate other people's computer systems."  http://searchsecurity.techtarget.com/definition/honey-pot

"Plaintiffs' representations about their operations, relationships, and financial interests have varied from feigned ignorance to misstatements to outright lies. But this deception was calculated so that the Court would grant Plaintiffs' early-discovery requests, thereby allowing Plaintiffs to identify defendants and exact settlement proceeds from them. With these granted requests, Plaintiffs borrow the authority of the Court to pressure settlement." Ingenuity 13, *supra*, at p. 5.[8]

Later, in explaining why sanctions were justified, the Court noted that if the Prenda lawyers had

"assigned the copyright to themselves, brought suit in their own names, and disclosed that they had the sole financial interest in the suit, a court would scrutinize their conduct from the outset. But by being less than forthcoming, they defrauded the Court." Ingenuity 13, *supra*, at p. 8.

Here, as to what appears to be "feigned ignorance to misstatements to outright lies," about IPP and Guardaley, compare Malibu's statements on the record in this district to Judges Titus and Grimm ("The German investigative company Guardaley has not reinvented itself as IPP, Ltd.," Exhibit S, p. 18) with the entire rest of the Pietz Decl. Pietz Decl. ¶¶ 26–38, Exhibits L to V (detailing links between Guardaley and IPP). Similarly, Mr. Fieser swore in a declaration filed here that he personally used IPP's software, running on IPP's servers, to collect the data that serves as the basis for this lawsuit. *See* Fieser Decl., Exhibit A, ¶¶ 6, 8, 11, 12, 15. However, Malibu's new story, appears to be that it was actually Michael Patzer, who works for another German company called Excipio, who collected the data, using Excipio's software, on Excipio's servers. *See* Exhibit Z, p. 8.

What to do about all this?

As a preliminary issue, to clear up the kind of objection Malibu was threatening to make as to Movant's standing to seek relief from this Court, Movant seeks to intervene in this action as of right, per Fed. R. Civ. P. 24. Malibu's position, at least in the case before Judge Motz, was that ISP Subscribers like Movant who have not yet been served have no right to do anything in these cases other than have

---

[8] Page references to the *Ingenuity 13* case are to the PACER pagination.

their depositions taken.  Movant disagrees, but the easiest way to move past the issue is to formally

intervene.

Another preliminary issue concerns who should hear and decide the issues raised here, and with

what mandate?  These issues certainly apply to all of the Malibu cases in this district.  Accordingly,

Movant seeks consolidation, per Fed. R. Civ. P. 42(a)(1), of all Malibu cases in this district as to the

issues raised here.  Judges Titus and Grimm have already presided over a consolidated phase of Malibu

litigation in this district, last year.  *See*, *e.g.*, *Malibu Media, LLC v. John Doe*, D. Md. No. 8:13-cv-0360-

RWT, ECF Nos. 9, 31. Further, it must be noted that given Malibu's fairly transparent attempt to avoid

Judge Motz's courtroom—for obvious reasons, in view of the cases cited above—transferring this issue

back to his consideration would only be just desserts.  *Cf. Hines v. KFC United States Props.*, 2010 U.S.

Dist. LEXIS 13051 (S.D. Cal. Feb. 16, 2010) (noting that dismissing one case so as to re-file another

one for the same claims before a different court was a form of forum shopping).  In any event, Movant is

pleased to proceed before any Judge of this Court, but does believe it would make sense for these issues

to be adjudicated in consolidated fashion.

One final preliminary issue concerns what should happen with respect to ISP subpoenas that seek

to identify Movant and any similarly situated litigants while the Court considers what to do about the

contingent fee witness issue.  Movant therefore prays that the Court stay the return date on the

outstanding subpoena seeking to identify Movant, and similarly order any further subpoena returns to be

stayed in all related Malibu cases, and also refrain from issuing further authorizations for new

subpoenas, pending adjudication of the Motion For An OSC and further order of the Court.  If the Court

decides that these cases should not be dismissed, then discovery, including the ISP subpoena, could

resume.  However, given that the authorization to issue the ISP subpoenas was predicated upon an *ex*

*parte* motion that did not appraise the Court of key adverse facts,[9] the returns on the subpoenas to the ISPs should be stayed until the Court can consider those facts.

The foregoing three issues, namely anonymous intervention, consolidation, and a temporary subpoena return stay order, have been combined into a single "Procedural Motion" analyzing all three issues.  The "Motion For An OSC," filed concurrently, is briefed separately.  The Court may wish to consider and decide the issues in the Procedural Motion before the Motion For An OSC on the merits.

As to the merits, given the current procedural posture, an order to show cause is the right way forward, so Malibu can put the relevant facts on the record before *this* Court.  In particular, Malibu should be ordered to show cause on three factual issues and one resulting legal one, as follows: (1) confirm whether IPP and Fieser were engaged as contingent fee witnesses and detail the nature and extent of the relationship; (2) given the substantial documentary evidence suggesting otherwise, explain the statement made on the record to Judges Titus and Grimm denying that IPP is a front for Guardaley, and the apparent attempts to disguise Guardaley's behind-the-scenes role in these cases; (3) explain the conflicting statements about whether it was IPP or Excipio software used to collect the data this case is based on; and (4) assuming that IPP and Fieser do or did have a contingent interest in the outcome of this litigation and that IPP is really a front for Guardaley, and that Malibu has been less than forthright about all this, address what effect such champertous arrangements and lack of candor should have on this and other similarly situated cases, in view of Movant's arguments in the Motion For An OSC that preclusion and dismissal should result.

---

[9] ABA Model and Maryland Lawyer's Rules of Professional Conduct Rule 3.3(d): "In an *ex parte* proceeding, a lawyer shall inform the tribunal of all material facts known to the lawyer that will enable the tribunal to make an informed decision, whether or not the facts are adverse".

* * *

As noted, the Fourth Circuit has declared that "witness contingency fee agreements affirmatively violate the fundamental policy of Maryland and the United States."  Based on what appears to be true from the facts adduced so far, one can hardly imagine a scenario that would be a greater affront to such a policy than the Malibu Media litigation.

## II.  RELEVANT FACTUAL AND PROCEDURAL BACKGROUND

The factual and procedural background of the Malibu litigation in this district is set out in much greater detail in the accompanying Motion For An OSC.

As relevant here, Plaintiff filed a complaint for copyright infringement and then a motion for leave to issue a subpoena to Movant's ISP prior to the Rule 26(f) deadline.  Movant's status is that he has been notified by his ISP that Malibu has served a subpoena on the ISP seeking Movant's identifying information.  This motion is being filed prior to the court-ordered deadline by which Movant must seek to quash or otherwise object to the ISP subpoena.  Movant's name and billing information have not yet been tendered to the plaintiff through a subpoena return by the ISP.

Malibu's local counsel in Maryland, Mr. Jon Hoppe, is to be commended for taking seriously the distinction between an Internet user who Malibu may *suspect* of infringement, because he or she was identified (through a subpoena authorized on an *ex parte* basis) as the person who pays the bill for an account linked to alleged infringing activity, and someone who has been served as defendant in a lawsuit like this.  At this point in the litigation, Movant is the former, rather than the latter.

Further to Judge Titus and Judge Grimm's special procedure developed for the Malibu cases in this district,[10] Mr. Hoppe has made it his practice to routinely try and take the 1-hour depositions that Judges Titus and Grimm allowed. Specifically, in this district, Malibu has generally sought to depose the person identified by the ISP subpoena, which is, necessarily, the person who pays the bill for the Internet account allegedly linked (on Mr. Fieser's say so) to supposed infringing downloads. This is entirely consistent with Mr. Hoppe's duty under Rule 11(b)(3)[11] to make an adequate factual investigation prior to simply assuming that the person who pays the bill is the alleged infringer, and just then *naming and serving him or her as the defendant*. Unfortunately, some of Mr. Hoppe's counterparts handling Malibu cases in other regions do seem to simply just assume that he or she who pays the bill is likely the infringer, so they go ahead and name that person without conducting any additional discovery beyond the ISP subpoena. *See, e.g., Malibu Media, LLC v. Booth*, D. Colo. No. 1:13-cv-2362 (Daniel, J.) (filed by local counsel Jason Kotzker); *Malibu Media, LLC v. John Doe*, N.D. Ill. No. 1:13-cv-2702 (Shadur, J.) (filed by local counsel Mary Schulz); *Malibu Media, LLC v. John Doe*, N.D. Ill. No. 1:13-cv-3648 (Kennelly, J.) (same); *Malibu Media, LLC v. John Doe*, N.D. Ill. No. 1:13-cv-3707 (Darrah, J.) (same); *Malibu Media, LLC v. John Doe*, E.D. Mi. No. 2:13-cv-11432 (Drain, J.) (filed by local counsel Paul Nicolletti).[12]

---

[10] *See, e.g., Malibu Media, LLC v. John Doe*, D. Md. No. 8:13-cv-0360-RWT, ECF No. 31, p. 5 (explaining the procedure utilized in the Malibu cases and authorizing 1-hour depositions of ISP subscribers if plaintiff "determines that the Information received pursuant to the subpoena is insufficient to support the filing of an amended complaint.")

[11] This procedure is also consistent with the paradigm under which the Federal Rules of Civil Procedure allow for only carefully circumscribed pre-suit discovery. *Cf.* Fed. R. Civ. P. 27.

[12] These are all active cases where undersigned counsel is representing John Doe ISP subscribers who have been *named and served as the defendants*, without Malibu having conducted any discovery beyond the ISP subpoena.

Where Mr. Hoppe has overreached,[13] is in his insistence that Movant, and people similarly situated in this district, have no right do anything in these cases other than have their depositions taken. Mr. Hoppe's view is that an answer by Movant would be premature, as Movant has not yet been named or served.  Mr. Hoppe reasons that since Movant is not currently a party, Movant should not be permitted to file anything, engage in any discovery of his own, or request anything of this Court.

Accordingly, in view of Mr. Hoppe's position, in order to alert the Court to the apparent improprieties with IPP (on whose observations, this and every other Malibu case are based) and as a first step on the road to relief, Movant seeks to intervene per Fed. R. Civ. P. 24.

## III.  INTERVENTION BY MOVANT IS WARRANTED

Rule 24 provides that a court must permit a movant to intervene as of right where the movant, "claims an interest relating to the property or transaction that is the subject of the action, and is so situated that disposing of the action may as a practical matter impair or impede the movant's ability to protect its interest, unless existing parties adequately represent that interest."  Fed. R. Civ. P. 24(a)(2).

"Applicants to intervene as of right must meet all four of the following requirements: (1) the application to intervene must be timely; (2) the applicant must have an interest in the subject matter[14] of the underlying action; (3) the denial of the motion to intervene would impair or impede the applicant's ability to protect its interest; and (4) the applicant's interest is not adequately represented by the existing

---

[13] As expressed in meet and confer consultations in the case before Judge Motz.  See Exhibit X, pp. 3–4.

[14] The D.C. Circuit is a bit more specific on this prong.  It does not use the term "subject matter," but rather asks whether the intervenor "claims an interest relating to the property or transaction which is the subject of the action." Appleton v. FDA, 310 F. Supp. 2d 194, 196 (D.D.C. 2004); quoting Fund for Animals, Inc. v. Norton, 322 F.3d 728, 731 (D.C. Cir. 2003).

parties to the litigation." *Houston Gen. Ins. Co. v. Moore*, 193 F.3d 838 (4th Cir. 1999) *citing* Fed. R. Civ. Proc. 24(a); *Newport News Shipbuilding & Drydock Co. v. Peninsula Shipbuilders' Ass'n*, 646 F.2d 117, 120 (4th Cir.1981); *see also Appleton v. FDA*, 310 F. Supp. 2d 194, 196 (D.D.C. 2004); *Fund for Animals, Inc. v. Norton*, 322 F.3d 728, 731 (D.C. Cir. 2003).

Permissive intervention is also allowed, on timely motion, when movant "has a claim or defense that shares with the main action a common question of law or fact." Fed. R. Civ. P. 24 (b)(1)(B).

Here, Movant satisfies the four requirements for intervention as of right:

(1)    Timeliness.  Intervention is timely because the suspicious facts about IPP's "oral contingency agreement" only came to right recently, and this particular case is just getting started. "Judicial assessment of intervention timeliness is essentially discretionary."  6-24 Moore's Federal Practice - Civil § 24.21 *citing Supreme Court. NAACP v. New York*, 413 U.S. 345, 366, 93 S. Ct. 2591, 37 L. Ed. 2d 648 (1973) (citing Moore's on this point and noting that "Timeliness is to be determined from all the circumstances. And it is to be determined by the court in the exercise of its sound discretion").

(2)    Interest.  Movant claims an interest related to the transaction, or subject matter, at issue, namely the supposed wrongful downloading of plaintiff's movies using an IP address linked (by IPP and Fieser) to Movant's internet account.  "The interest of the intervenor must be significantly protectable such that it will be directly and immediately affected by the litigation." *Werbungs und Commerz Union Austalt v. Collectors' Guild, Ltd.*, 782 F. Supp. 870, 874 (S.D.N.Y. 1991).  Absent intervention, Movant will be directly and immediately affected by the litigation in the form of being burdened with having his

deposition taken by plaintiff.[15]   Further, in the past, even when Malibu acknowledged that the person who paid the Internet bill was not the likely infringer, Malibu has nevertheless sought to hold the person paying the bill liable, for contributory infringement.   *Malibu Media, LLC v. House*, 2014 U.S. Dist. LEXIS 27939 (E.D. Mi. No. 13-12218, ECF No. 35, 3/5/14) (order granting Malibu's motion for leave to amend complaint to sue account billing contact wife for contributory infringement, where Malibu acknowledged that her husband was the only person with the "motive, means and opportunity" to do the alleged download).

(3)   Impairment of Interest.   Movant, as the person who paid the bill for an Internet account suspected of allowing infringement to occur on Movant's network, is situated such that disposition of this case without him will practically impede his ability to protect his interests.   At a minimum, absent intervention, Movant will likely be required to attend a deposition, thus providing the plaintiff with discovery, without having any opportunity to challenge the basis for suit or the basis for allowing the plaintiff to take pre-service discovery prior to a Rule 26(f) conference.   Absent intervention, it is unlikely anyone in this case, or in any of the related cases, will bring the issues raised here to the Court's attention.   *See Elliott Indus. v BP Am. Prod. Co.*, 407 F3d 1091 (10th Cir. 2005) (third party litigant's motion to intervene for purpose of challenging subject matter jurisdiction over putative class was granted where there was imperative reason justifying intervention, namely that no party had raised the issue of subject matter jurisdiction).

(4)   Adequacy of Representation.   Obviously, the fact that plaintiff has no adversarial opponent of any kind involved in this case should weigh heavily in favor of intervention.   *See id.;* *Appleton*, 310 F. Supp. 2d at 196.

---

[15] *See* Exhibit W (email demanding to depose ISP subscriber in 3024 Action before Judge Motz).

In the alternative, at a minimum, Movant should be allowed to intervene because he has a defense to infringement that shares with the main action a common question of law or fact. *See* Fed. R. Civ. P. (b)(1)(B). Specifically, the issues relating to the contingent fee agreement with IPP is an issue relevant not just for Movant in this case, but an issue relevant in all of Malibu's cases in this district, if not nationwide.

Further, although Movant will identify himself to the Court as per the procedure developed by Judges Titus and Grimm (*see Malibu Media, LLC v. John Doe*, D. Md. No. 8:13-cv-0360-RWT, ECF No. 31), he wishes to remain anonymous both in terms of disclosure of his identity to Malibu Media and the public, at least at this stage of the case. Malibu has previously represented to the Courts of this district "that the John Doe defendant can remain anonymous through the end of discovery." Exhibit S, p. 15. Accordingly, Malibu typically does not oppose motions for leave to proceed anonymously, and such motions have been granted in Malibu litigation in this district. *Malibu Media, LLC v. John Doe*, D. Md. No. 8:13-cv-360, ECF No. 41, 10/31/12 (Titus, J.) (granting ISP subscriber's unopposed motion for leave to proceed anonymously).

If Malibu now wishes to change course on this issue, out of spite, then Movant would request an opportunity to brief the matter more fully.

## IV.  ALL OF MALIBU'S CASES IN THIS DISTRICT SHOULD BE CONSOLIDATED FOR THE PURPOSE OF DETERMINING THE ISSUES RAISED IN THE MOTION FOR AN OSC

"If actions before the court involve a common question of law or fact, the court may: (1) join for hearing or trial any or all matters at issue in the actions. . . ."  Fed. R. Civ. P. 42(a)(1).  In *Hanes Cos. v. Ronson*, 712 F. Supp. 1223, 1230 (M.D.N.C. 1988), the court found that court found consolidation of two cases filed by same plaintiff "enhance[d] efficiency and economy for all concerned." *Id.* As the *Hanes* court noted, "actions involving the same parties are apt candidates for consolidation." *Id. citing* Wright & A. Miller, Federal Practice and Procedure § 2384, p. 263 (1971); *see also Miller v. United States Postal Service*, 729 F.2d 1033, 1036 (5th Cir. 1984) (consolidating two cases involving the same parties and issues which were pending in the same court).

However, "consolidation does not merge the suits into a single action; each case retains its separate character and requires a separate judgment." *Hanes*, 712 F. Supp. at 1230 at 1230, fn. 5 *citing Johnson v. Manhattan Railway Co.*, 289 U.S. 479, 496, 77 L. Ed. 1331, 53 S. Ct. 721 (1933).  Thus,  the limited, issue-based consolidation requested here would not mean that all of the Malibu cases in this district would need to be tried together, if the Motion For An OSC does not result in dismissal.

Here, there can be little doubt that these cases involve common questions of law and fact—all of the Malibu complaints are cookie cutter copies of one another that differ only as to the IP addresses and movies at issue.  Further, the specific issues raised in this motion apply to every single Malibu lawsuit in this district with equal force.  Thus, issue consolidation, or, alternatively, perhaps, relation of these cases together, per L.R. 103(1)(b), appears appropriate.

It must also be noted that this motion and the Motion For An OSC are being filed concurrently before three different Judges of this Court.  Obviously, it would be a waste of judicial resources to have three different Judges of this Court consider the exact same motions independently of one another.

As noted in the introduction, Judges Titus and Grimm presided over a consolidated phase of the Malibu litigation last year.  Further, by dismissing the 3024 Action, Malibu engaged in a form of forum shopping by attempting to avoid having the contingent fee witness exclusion issue decided by Judge Motz.  In view of the unusual circumstances of this litigation, courtesy copies of Movant's papers are being provided to all of the foregoing judicial officers.

Movant will not belabor the point.  Clearly, consolidation at least should be considered.  Beyond that, Movant will leave the matter to the sound discretion of the Court to determine as it sees fit.

## V.  PENDING ADJUDICATION OF THE MOTION FOR AN OSC, ALL ISP SUBPOENA RETURNS SHOULD BE STAYED

As explained in greater detail in the Motion For An OSC, when Malibu moved *ex parte* for leave to issue the ISP subpoena, the key facts it relied upon in that *ex parte* request came from the declaration of one Mr. Tobias Fieser of IPP.  *See* Fieser Decl.  However, it would appear that in connection with that *ex parte* request for relief, Malibu failed to disclose a key adverse fact, namely that IPP was being paid on an "oral contingency agreement".  Exhibit B, Response No. 1.  Until the Court has the opportunity to consider whether the Fieser Decl should be excluded and these cases dismissed, as argued in the Motion For An OSC, all outstanding subpoena returns should be stayed.  *Cf. Malibu Media, LLC v. John Does*, C.D. Cal. No. 2:12-cv-3614-RGK, ECF No. 18, 7/10/12 (order vacating "any order allowing for the issuance of a Rule 45 subpoena prior to a Rule 26(f) scheduling conference," pending the Court

"address[ing] jurisdictional concerns associated with these cases" after transfer of all related cases to same Judge); _Patrick Collins v. John Does_, C.D. Cal. No. 2:12-cv-5267-JVS, ECF No. 21, 11/5/12 (after transfer of all related cases in district to same Judge, finding prior orders authorizing early discovery were vacated as "improvidently granted" in view of new arguments which no defendant had an opportunity to make when plaintiff moved for early discovery on an _ex parte_ basis).

As Movant argues in much greater detail in the Motion For An OSC, without evidence from Fieser and IPP, there is no factual basis for a complaint. The same can also be said about the _ex parte_ motion for leave to issue the subpoena to the ISP; without the Fieser Decl., there is no factual basis that justifies burdening the ISP and Movant with the costs of responding to such a subpoena.

Movant would prefer that Malibu not be allowed to discover his identity, via a return on the ISP subpoena, until the Court can adjudicate whether the entire case should be dismissed and the Fieser Decl. excluded.

Movant's desire to remain unidentified[16] is made more acute by Malibu's history of vindictive retaliation against John Doe's who dare to assert their rights and fight back. In only the most recent example of such tactics, Magistrate Judge Simonton of the Southern District of Florida recommended that sanctions be levied against Malibu's lead national counsel Keith Lipscomb[17] for this kind of behavior. _Malibu Media, LLC v. Pelizzo_, S.D. Fl. No. 1:12-cv-22768, ECF No. 53, 2/18/14. After defense counsel in that case rejected a walk away settlement, Mr. Lipscomb wrote back with threats,

> "The list of infringements against your client is enormous. Respectfully, you should
> counsel him that when he loses, he will lose everything he owns and owe my clients

---

[16] Unidentified only as far as Malibu is concerned; Movant will identify himself to the Court, consistent with the procedure developed by Judges Titus and Grimm.

[17] In addition to overseeing all Malibu cases nationwide, the Lipscomb Eisenberg & Baker firm is based in Miami, so it handles Malibu's cases in Florida directly, with no local counsel buffer.

hundreds of thousands of dollars. Mark these words, your client's decision to reject a walk away will be the worst decision he will ever make." *Id.* at p. 14.

Accordingly, after the defendant made a motion for sanctions and briefing on this issue was referred to Judge Simonton, she issued her report and recommendation, which states,

> By both subjective and objective measures, the actions and threats as threats as detailed in the second email constitute bad faith and a willful abuse of the judicial process. Plaintiff's counsel had just offered to voluntarily dismiss the claim against Defendant when he sent the email threatening protracted, future litigation. That alone would have been sufficient to award sanctions, but Plaintiff's counsel also asked defense counsel to inform his client that he would be penniless at the conclusion of this case while also owing Plaintiff hundreds of thousands of dollars. The litigation tactics of Plaintiff's counsel amount to more than a lack of professional civility and reveals a pattern of behavior, albeit for a short period of time, that perpetuates 'stereotyped caricatures of attorneys held by some members of the public.' *Managed Care Solutions*, 2011 WL 4433570, *3. ***Threatening continued, meritless litigation and financial ruin is the definition of bad faith***. Accordingly, the Court will require Plaintiff's counsel to 'pay the costs, expenses, and attorneys' fees reasonably incurred because of the attorney's misconduct—that is, the excess costs that the attorney's multiplication of proceedings has added to the cost of the litigation.' *Amlong & Amlong, P.A. v. Denny's, Inc.*, 500 F.3d 1230, 1242 (11th Cir. 2007)." *Malibu Media, LLC v. Pelizzo*, S.D. Fl. No. 1:12-cv-22768, ECF No. 53, 2/18/14, at p. 15 (emphasis added).

In a similar vein, Malibu regularly dismissed mass joinder cases against all defendants, without prejudice, *except* those defendants who dared to retain counsel and object to swarm joinder. *See, e.g., Malibu Media, LLC v. John Doe*, D.D.C. No. 1:12-cv-764-BAH, ECF No. 19, 9/10/12 (notice of voluntary dismissal filed by Malibu's local counsel Jon Hoppe dismissing all defendants except those who objected to swarm joinder); *Malibu Media, LLC v. John Doe*, E.D. Mi. No. 2:12-cv-13312-DPH, ECF No. 67, 9/16/13 (same, except filed by Paul Nicolletti). In short, Malibu has a history of improper retaliation against John Does who assert their legal rights.

By contrast, there will be no prejudice to Malibu by staying the subpoena return pending adjudication of the Motion For An OSC. Movant hereby offers to stipulate to a reasonable extension of the Rule 4(m) service of process deadline to make up for any delay caused by this requested stay.

- 22 -

# VI.  CONCLUSION

For the foregoing reasons, Movant respectfully requests that: (1) the Court grant leave for Movant to intervene in this action as of right, or, in the alternative, as a matter of the court's discretion, on an anonymous basis, to litigate the Motion For An OSC; (2) the Malibu cases in this district be consolidated for the purpose of determining the issues raised in the concurrently filed Motion For An OSC; and (3) the return date be stayed on the ISP subpoena seeking to identify Movant, as well as on all similar subpoenas in other Malibu cases, pending adjudication of the Motion For An OSC.  If this motion is granted, Movant will be glad to give notice to the ISPs for the clients on the caption, but would ask that Malibu be ordered to give notice to the ISPs for all its other cases.

 Respectfully submitted,

DATED:      March 28, 2014


THE PIETZ LAW FIRM                        JOHN C. LOWE PC

*/s/ Morgan E. Pietz*                        */s/ John C. Lowe*


Morgan E. Pietz (Cal. Bar No. 260629)*      John C. Lowe (Md. Bar No. 12409)
3770 Highland Avenue, Suite 206           5920 Searl Terrace
Manhattan Beach, CA 90266                 Bethesda, MD 20816
mpietz@pietzlawfirm.com                   johnlowe@johnlowepc.com
Telephone: (310) 424-5557                 Telephone:  (202) 251-0437
Facsimile:  (310) 546-5301                Facsimile:    (301) 320-8878

*Application for Admission Pro Hac          Local Counsel
Vice Pending*

Attorneys For Putative John Does Identified On The Caption

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on this date, I electronically filed the foregoing paper with the Clerk of the Court using ECF, which will send notification of such filing to all attorneys of record.

*/s/ John C. Lowe*
John C. Lowe
DATED:       March 28, 2014