# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF MARYLAND

| | | |
|---|---|---|
| **MALIBU MEDIA, LLC** | * | |
|     **Plaintiff** | * | |
|     **v.** | * | Case No. 14-cv-00223-MJG |
| **JOHN DOE** subscriber assigned IP address 173.64.119.92 | * | |
| | * | |
|     **Defendant** | * | |

| | | |
|---|---|---|
| **MALIBU MEDIA, LLC** | * | |
|     **Plaintiff** | * | |
|     **v.** | * | Case No. 14-cv-00257-RWT |
| **JOHN DOE** subscriber assigned IP address 71.200.143.209 | * | |
| | * | |
|     **Defendant** | * | |

| | | |
|---|---|---|
| **MALIBU MEDIA, LLC** | * | |
|     **Plaintiff** | * | |
|     **v.** | * | Case No. 14-cv-00263-PWG |
| **JOHN DOE** subscriber assigned IP address 76.100.228.15 | * | |
| | * | |
|     **Defendant** | * | |

*********

**MEMORANDUM OPINION**

Malibu Media, LLC ("Malibu") has filed various copyright infringement lawsuits in this and other districts against individual "John Doe" defendants who are alleged to have used the BitTorrent file distribution network to download adult pornographic films in violation of copyrights held by Malibu. *See* ECF No. 1.[1] When it initiates the lawsuits, Malibu is only able to identify the alleged infringers by reference to the Internet Protocol address ("IP address") through which the copyrighted work was downloaded. In order to seek to identify the person who committed the infringement, Malibu filed a "Motion to Expedite Discovery" in each case, requesting leave of the Court to serve a Rule 45 subpoena on the Internet Service Provider ("ISP") in order to identify the account subscriber assigned the relevant IP address on the date of the downloading of the copyrighted work. ECF No. 4.

The fact that an IP address was assigned to a particular ISP subscriber at the time it was used for infringement does not itself necessarily imply infringement by that subscriber. Rather, Malibu would need to pursue discovery to seek to establish whether the subscriber, rather than someone else, used the IP address to commit the infringement at issue.

Because this Court was aware of allegations that Malibu had engaged in abusive settlement negotiations in other jurisdictions, the Court fashioned a unique procedure that Malibu must follow in order to pursue this discovery. *See* ECF No. 6. The Court's standard order in these cases (1) creates a procedure for ISP subscribers to anonymously move to quash the subpoena served on the ISP, (2) includes provisions prohibiting Malibu from contacting unrepresented John Does for settlement negotiations, and (3) specifies other protections for subscribers. To the best of this Court's knowledge, Malibu has complied with these procedures and this Court is unaware of any allegations of abuse in this district.

---

[1] References to the docket refer to Case No. 14-cv-00223-MJG. Identical filings were made in all three cases.

In the three above-captioned cases, after the Court had granted the motions to expedite discovery, subscribers' counsel in all three cases filed, on March 28, 2014, the two motions at issue here: First, a Motion to: (1) Intervene Anonymously; (2) Consolidate Malibu Media Cases; and (3) Temporarily Stay Outstanding Subpoenas (ECF No. 7, "Mot. Intervene") and Second, a Motion for Order to Show Cause as to Why All Evidence and Data from Tobias Fieser and His Company IPP Should Not be Precluded and These Cases Dismissed (ECF No. 8, "Mot. OSC"). Malibu filed responses in opposition to each motion, ECF Nos. 18, 19, and the subscribers replied, ECF Nos. 23, 27.[2] On July 30, 2014, the Court held a hearing on the pending motions. ECF No. 39. For the reasons that follow, the Court will deny both of the ISP subscribers' motions.

I.   Subscribers' Motion to Intervene

Each ISP subscriber argues that he is entitled to intervene of right pursuant to Fed. R. Civ. P. 24(a)(2) because he "claims an interest relating to the property or transaction that is the subject of the action, and is so situated that disposing of the action may as a practical matter impair or impede [his] ability to protect [his] interest," and existing parties do not adequately represent that interest. Mot. Intervene at 15 (quoting Fed. R. Civ. P. 24(a)).

In *Houston Gen. Ins. Co. v. Moore*, 193 F.3d 838, 839 (4th Cir. 1999), the Court concluded that:

> Applicants to intervene as of right must meet all four of the following requirements: (1) the application to intervene must be timely; (2) the applicant must have an interest in the subject matter of the underlying action; (3) the denial of the motion to intervene would impair or impede the applicant's ability to protect its interest; and (4) the applicant's interest is not adequately represented by the existing parties to the litigation.

---

[2] On April 28, 2014, Malibu filed a Motion to Strike Declaration of Morgan E. Pietz. ECF No. 17. The subscribers responded in opposition, ECF No. 24, and Malibu replied. ECF No. 31.

Each subscriber argues that his motion is timely because the facts "only came to [l]ight recently, and this particular case is just getting started." Mot. Intervene at 16. The determination of timeliness is in the Court's discretion. *See Gould v. Alleco, Inc.*, 883 F.2d 281, 286 (4th Cir. 1989) (citing *NAACP v. New York*, 413 U.S. 345, 365–66 (1973)). Each subscriber claims an interest in the action because he "will be directly and immediately affected by the litigation in the form of being burdened with having his deposition taken by plaintiff," and because Malibu has allegedly pursued damages against subscribers in prior cases even when the subscriber was not the likely infringer. Mot. Intervene at 16–17. Each subscriber argues that denial of the motion would impair his interest because it would deprive him of the opportunity to challenge the basis for the suit prior to submitting to a deposition and/or providing Malibu with discovery. *Id.* at 17. Finally, each argues that his interests are not represented by the existing parties to the action. *Id.* In the alternative, each subscriber argues that he should be allowed to intervene under Fed. R. Civ. P. 24(b) because his defense to infringement shares "a common question of law or fact" with the issue in this case, that is, "the contingent fee agreement with IPP" is arguably relevant to all Malibu cases in this district.  Mot. Intervene at 18.

   Malibu, in turn, disputes that each subscriber satisfies this standard, arguing, among other things, that this is not the proper stage of the litigation for a subscriber to raise these issues. Plaintiff's Opposition to the Motion to Intervene, ECF No. 23 ("Opp'n Intervene") at 4-5. The Court agrees and need not address each of the *Houston General* factors because intervention is not warranted. Malibu is proceeding against a known but unidentified defendant. The Complaint identifies the defendant as "John Doe subscriber assigned IP address 173.64.119.92," and Malibu was granted permission to take discovery from each subscriber's ISP because it could not identify and serve the Defendant without that information. ECF Nos. 1, 6. This is distinct from

procedures in some state courts in which a plaintiff seeking to identify an unknown party may initiate a special proceeding against the person from which discovery is to be taken, in which the "Doe" would be an intervener rather than a party. *See, e.g.*, *Pub. Relations Soc'y of Am., Inc. v. Road Runner High Speed Online*, 799 N.Y.S.2d 847 (Sup. Ct. N.Y. Cnty. 2005). The procedures established by this Court's orders granting Malibu's Motion to Expedite Discovery fully protect the ability of the ISP subscriber to participate anonymously and without the need for intervention. The subscribers need not, therefore, intervene under Rule 24 to proceed in this Court, and their motions will be denied.[3]

## II. Subscribers' Motion for Order to Show Cause

The motions for an order to show cause request that Malibu be ordered to show cause with regard to the following issues:

> (1) Confirm whether IPP and Fieser were engaged as contingent fee witnesses and detail the nature and extent of the relationship; (2) given the substantial documentary evidence suggesting otherwise, explain the statement made on the record to Judges Titus and Grimm denying that IPP is a front for Guardaley, and the apparent attempts to disguise Guardaley's behind-the-scenes role in these cases; (3) explain the conflicting statements about whether it was IPP or Excipio software used to collect the data this case is based on; and (4) assuming that IPP and Fieser do or did have contingent interest in the outcome of this litigation and that IPP is really a front for Guardaley, and that Malibu has been less than forthright about all this, address what effect such champertous arrangements and lack of candor should have on this and other similarly situated cases, in view of Movant's arguments and the Motion for an OSC that preclusion and dismissal should result.

Mot. OSC at 23-24. The subscribers' primary argument is that Malibu is paying a contingent fee to its expert, Tobias Fieser, whose declaration has been attached to each of Malibu's complaints. The subscribers rely on Maryland law holding that expert witness contingent fees are not permissible and that a witness who is receiving a contingent fee cannot be called to testify. *See,*

---

[3] The Court will also deny the subscribers' motion to consolidate cases. To the extent the Court has granted requests to stay litigation in other Malibu cases pending a decision on these motions, those stays will be lifted.

*e.g.*, *Accrued Fin. Servs., Inc. v. Prime Retail, Inc.*, 298 F.3d 291, 300 (4th Cir. 2002) ("[W]e also conclude that the arrangements are against public policy insofar as they provide for supplying *expert* testimony for a contingent fee."); *see also Accrued Fin. Servs. Inc. v. Prime Retail*, No. JFM-99-2573, 2000 WL 976800, *3 (D. Md. June 19, 2000) ("[T]he Maryland Rules of Professional Conduct applicable to members of the bar recognize that '[t]he common law rule in most jurisdictions is that it is improper to pay an occurrence witness any fee for testifying and that it is improper to pay an expert witness a contingent fee.'" (quoting Md. Rules 16-812, Md. Lawyers' Rules of Prof'l Conduct 3.4 cmt (2000)). The motions seek to exclude the information relied upon by Malibu and to dismiss all of Malibu's pending cases.[4]

It is likely that an expert paid a contingent fee could not serve as a witness in a case in this district. *See Farmer v. Ramsay*, 159 F. Supp. 2d 873, 883 (D. Md. 2001) (striking report of expert receiving contingent fee); *but see United States v. Holloman*, 238 F.3d 416 (4th Cir. 2000) and *United States v. Levenite*, 277 F.3d 454 (4th Cir. 2002) (criminal cases allowing contingent fee witness testimony and holding that reliability of witness is a credibility issue to be determined by a jury). And it may well be such a fee agreement itself is unenforceable as contrary to public policy. *See Accrued Fin. Servs.*, 298 F.3d at 300. However, Malibu makes a strong argument that there is no reason why it cannot have a contingent fee contract with an expert who is not testifying. Opp'n OSC at 20 (stating that should the case go to trial, Malibu would call a different witness, Michael Patzer, to testify). In addition, Malibu disputes that Fieser

---

[4] The subscribers also allege that Malibu violates the Anti-Gratuity Statute, 18 U.S.C. § 201 which prohibits knowingly paying a person to testify. Mot. OSC at 31. This criminal statute likely has not been violated as there is no evidence that the witness has been directly paid for any testimony and is nevertheless not relevant at this stage of the proceedings. Opp'n OSC at 24.

has received a contingent fee because he is a salaried employee of the company receiving the fee, IPP, and does not directly benefit from any contingent fee arrangement. Opp'n OSC at 10.[5]

These issues have little relevance at the pleading stage of this litigation because there is no requirement that Malibu present at this stage actual evidence to support the merits of its infringement allegations. *See* Fed. R. Civ. P. 11(b)(3). If Malibu's counsel has a good faith basis to believe that it will be able to obtain and present evidence to show that a subscriber is the proper defendant, Malibu need not have that evidence in hand to commence an action. In any event, Malibu asserts that it no longer has a contingent fee agreement, and now has a fixed fee agreement with IPP. Opp'n OSC at 14.

The subscribers' other arguments in their motions are either premature or far too speculative for the Court to consider at this stage in the litigation. For example, each subscriber argues that Malibu is engaged in a course of deception and fraud. The subscribers rely heavily on parallels to *Ingenuity 13, LLC v. John Doe*, No. 2:12-cv-8333-ODW(JCx), 2013 WL 1898633 (C.D. Cal. May 6, 2013). However, *Ingenuity 13* involved actual and documented fraud, misrepresentations to the Court, and clearly improper activity. Although the subscribers try to allege similar improprieties on Malibu's part, there is not presently before the Court any indication that Malibu has done anything improper or fraudulent in these cases.

Each subscriber also relies heavily on *Accrued Fin. Servs.*, 298 F.3d 291, in which a company was assigned certain causes of action possessed by commercial tenants in exchange for a percentage of any damages or settlement obtained in those suits. The court dismissed the case on public policy grounds, finding that the assignments of the causes of action were champertous,

---

[5] Malibu also argues that even if a contingency agreement existed, it could not cause human bias in the data because the data showing infringement can't be manipulated by individuals at IPP. In addition, the data is independently verifiable so it doesn't matter if Fieser, Patzer, or any other uncompensated individual were to testify to its reliability. *Id.* at 7–13.

and the Fourth Circuit affirmed.[6] *Id.* However, the above-captioned Malibu cases do not appear to be cases involving champerty. Even if each subscriber is correct that IPP is helping Malibu to "stir up" litigation, there is no indication that anyone other than Malibu is directing the litigation and the Fourth Circuit expressly stated that it would be permissible for an expert to offer consulting services to help a party pursue legal claims. *Id.* at 300.

Finally, each subscriber alleges that Malibu's expert, IPP, apparently uses techniques that do not reliably determine whether a given IP address has downloaded a particular file, that Malibu has obfuscated as to precisely what techniques were used to identify the Doe subscribers, and that the software used is subject to manipulation. Mot. OSC at 52–56. In addition, IPP is alleged to be the successor to a German firm called Guardaley, which German courts have found is not reliable in copyright cases. *Id.* at 42. Malibu strongly disputes the subscribers' characterization of the facts. Opp'n OSC at 16. The subscribers' allegations of misrepresentation seem to be based largely on speculation and the Court has seen no direct evidence of impropriety on the part of Malibu in these cases. In any event, the degree to which this information is reliable is not particularly relevant at the pleading stage. The subscribers will have an opportunity to take discovery and raise these issues, if they are meritorious, at a later stage in the litigation.

### III.   Conclusion

For the foregoing reasons, the Court will deny the ISP subscribers' motions to intervene and motions for the court to issue an order to show cause. The motions to strike the declaration of the subscribers' counsel, Morgan Pietz, will be denied as moot. The unopposed motions to unseal the declaration of Gabriel Quearry will be granted. Finally, any stays that have been

---

[6] Notably also, in *Accrued Financial*, the Court dismissed the Complaint based on a Rule 12(b)(6) motion whereas here, the subscribers ask the court to do so based on its general "supervisory power, in order to protect the integrity of the judicial process and forestall ethical violations, or as a sanction." Mot. OSC at 37.

granted in these and other cases pending a ruling on the above-referenced motion will be lifted. Separate Orders follow.

Date: <u>September 18, 2014</u>  /s/
ROGER W. TITUS
UNITED STATES DISTRICT JUDGE

Date: <u>September 18, 2014</u>  /s/
MARVIN J. GARBIS
UNITED STATES DISTRICT JUDGE

Date: <u>September 18, 2014</u>  /s/
PAUL W. GRIMM
UNITED STATES DISTRICT JUDGE